IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GENEVIEVE CAUTIÑO LABOY and
her daughter KARINA MARTÍNEZ
CAUTIÑO,

Plaintiffs

v.                                                    CIVIL 03-1035 (SEC)

HOTEL SAN JUAN Y CASINO, y/o
WYNDHAM INTERNATIONAL INC.,
JULIO R. SOLLA,

Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.

Plaintiff Genevieve Cautiño Laboy (hereinafter "Cautiño") and her daughter Karina Martínez Cautiño (hereinafter "Martínez"), filed a complaint on January 14, 2003 against Cautiño's former employer Hotel San Juan y Casino and/or Wyndham International, Inc. (hereinafter collectively referred to as the "Hotel") and the Risk Manager of the Hotel, Julio Solla (referred to hereinafter as "Solla"). (Docket No. 2.)  Cautiño claims to have been the victim of sexual harassment, hostile work environment and retaliation, which would be  violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter "Title VII").[1] This activity allegedly occurred while Cautiño was an administrative assistant in the Risk

---

[1]Reference to a right-to-sue letter being issued leads to the inference of the jurisdictional basis of this complaint since it cites no jurisdictional statutes.

CIVIL 03-1035 (SEC)                    2

Management Department and while under the administrative and supervisory control of Mr. Solla.  She has also invoked this court's supplemental jurisdiction, 28 U.S.C. § 1367, although in not so many words, to assert a cause of action under Puerto Rico law.  The following are the relevant allegations in plaintiffs' complaint.

Around July 2001, Solla made numerous physical and emotional contacts with Cautiño, including asking her to live with him in exchange for an increased salary.  He gave her numerous gifts and asked her to travel with him outside of Puerto Rico.  These unwanted incidents allegedly occurred on a daily basis, affecting her health and job performance.  As a result of his conduct, Cautiño referred a complaint to the Human Resources Department and Director of Security of the Hotel.  As a consequence of the investigation that arose from her complaint, Solla[2] was allegedly fired in October 2001.

Plaintiffs note in the complaint that Solla had a history of this type of discriminatory action against other female employees.  Plaintiff alleges that as a result of her actions, she became the object of retaliatory actions, including being assigned to perform chores not in keeping with her job duties, such as lifting heavy boxes, packing documents for shipping, moving heavy boxes of documents into

---

[2]The action against co-defendant Solla was dismissed on January 14, 2004 for failure of plaintiffs to have complied with Puerto Rico Rule of Civil Procedure 4.5, 32 P.R. Laws Ann. App. III Rule 4.5, as well as for failing to have served summons within 120 days, and for failing to show good cause under Rule 4(m), Federal Rules of Civil Procedure.  (Docket No. 17.)  A partial non-appealable judgment was entered on the same day.  (Docket. No. 18.)

CIVIL 03-1035 (SEC)                    3

storage, performing inventory of old documents which were to be disposed of, cleaning and moving furniture, as though a housekeeper.  She became the object of ridicule of other employees by performing tasks not suitable for her, including taking silly messages to different offices.  Her environment was full of dust and garbage while she packed boxes.  The stacking of old documents in old boxes created a dangerous and environmental hazard.  Communication with fellow employees became hostile.  Those employees made comments behind her back that she deserved the treatment, including comments that her termination was already planned.  Her temporary supervisor was Solla's personal friend.  Communication with him was brief and hostile.  She was allegedly offered menial or lesser jobs within the corporate structure to expedite her resignation.

Various job positions were announced as to which Cautiño was told that those positions were for the exclusive benefit of others in the different departments or sections.  In one case, she applied for a position and was told it was no longer available.  Having been interviewed for positions which were supposedly available and for which she was qualified, the positions were never offered.

On January 16, 2002, Cautiño was allegedly terminated from her job, and forced to sign a general release agreement in exchange for $1,300, an amount computed by her employer in accordance with local Law No. 80.[3]

---

[3]Law No. 80 of May 31, 1976, 29 P.R. Laws Ann. § 185(a) et seq.

CIVIL 03-1035 (SEC)                4

On February 21, 2002, Cautiño filed a discrimination charge at the Equal Employment Opportunity Commission (hereinafter "EEOC"). The EEOC issued a right-to-sue letter on October 24, 2002. Plaintiffs then filed the present action claiming that they had suffered severe mental and physical damages as a result of the hostile work environment and retaliation Cautiño experienced at the Hotel. Plaintiffs seek damages in the ad damnum in neither a determinate nor an indeterminate amount.

This matter is now before the court on the Hotel's motion for summary judgment filed on October 4, 2004. (Docket No. 44.) The Hotel generally argues that the evidence in the record, even when viewed in the light most favorable to plaintiffs, does not establish an actionable claim of sexual harassment or sexual discrimination. The Hotel argues that Cautiño did not comply with her employer's policy against sexual harassment, that she was notified in time of the elimination of her position based upon legitimate business reasons, and that she was terminated with just cause. In addition, the Hotel maintains that the evidence in the record is also insufficient to establish a prima facie case of sexual discrimination. Finally, the Hotel argues that Martínez' suffering, if any, was not due to any illegal action on the part of the Hotel.

Cautiño responded that both sexually discriminatory and retaliatory conduct occurred and that she has satisfied all of the requirements for defeating the motion for summary judgment.

CIVIL 03-1035 (SEC)                    5

On June 3, 2005, the court referred this case for report and recommendation. (Docket No. 69.)  I now analyze the appropriateness of summary judgment in this case.  But first, the standard of review.

II.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor.  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant.  López-Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000) (quoting Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation."  Id.; see also Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit Plan v. Smith Barney

CIVIL 03-1035 (SEC)                        6

Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

     The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law.  Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

                                    III.

     In the District Court of Puerto Rico, Local Rule 56(b), previously 311(12), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.  These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material fact establishing that there is a genuine issue in dispute. Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 56(e) (2004); see Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 26 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).  These facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material

CIVIL 03-1035 (SEC)                    7

fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930-31 (1st Cir. 1983); Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party. Morales v. A.C. Orssleff's EFTF, 246 F.3d at 33; Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d at 929.

The Hotel has submitted a statement of material facts as to which there is no genuine issue to be tried as required under Local Rule 56(b).  The Hotel states that Cautiño's job performance, as reflected in her evaluations, was deficient, and that she never reached the level of commendable or superior.  She did not follow specific instructions from her supervisor, and was informed  verbally and in writing about her poor performance.  She was given a warning on August 14, 2001 due to the negligent execution of her work, in that she prepared a report ignoring instructions on the way it was to be prepared.  On September 11, 2001, Cautiño complained about her supervisor, and his gender-based  comments to Waleska Otero, the Hotel's Human Resources Director.  The Hotel argues that Cautiño never complained about any alleged touching by Solla, nor that she was sexually harassed.

Solla admitted, when confronted by Waleska Otero, that he had acted inappropriately toward Cautiño when he asked her to leave his office on two

CIVIL 03-1035 (SEC)                    8

occasions, and explained that any comment was not made to cause Cautiño any harm.  No formal report of sexual harassment or any other complaint was made before the written warning of August 14, 2001.  Cautiño confided in co-workers about her problems but did not follow the Hotel's procedures applicable under the circumstances.  Rather she began a journal of the alleged harassment.

The Hotel conducted an investigation about Cautiño's allegations, and immediately took corrective measures by separating Cautiño and Solla in their job duties.  Upon concluding the investigation, the Hotel presented Solla with a written warning urging him to cease any inappropriate behavior and or modify his behavior.  Solla denied the allegations of sexual harassment and claimed that moving from his office would be an admission to the allegations.  Solla then resigned upon being asked by the Hotel to move to another office, not because of his conduct in relation to Cautiño.  Cautiño was then assigned temporary duties.  Because the Risk Management Department in Puerto Rico essentially consisted of Solla and Cautiño, the Hotel decided to close it in Puerto Rico and move its functions to the corporate headquarters in Dallas, Texas.  The reorganization caused that there was no more work for Cautiño.  She was then placed in another office, with the Operations Manager, Mr. Tim Hauss, at the same salary.  Duties included organizing and preparing lists of cases that were closed and grouped in files and boxes.

CIVIL 03-1035 (SEC)                              9

Plaintiff Cautiño was notified that her position would be eliminated and was kept employed for two months after which, on January 15, 2002, she was terminated. She was offered unwarranted severance pay in lieu of signing a release.

The defendants argue that they are entitled to summary judgment because Cautiño's position regarding sexual harassment cannot be sustained as a matter of law. Specifically, the defendants maintain that Cautiño cannot show a causal link between Solla's conduct and any tangible employment action suffered by her. It is further claimed that she cannot demonstrate the existence of a hostile work environment. The defendants maintain in their memorandum of law that the Hotel cannot be held liable for Solla's conduct under the affirmative defense set forth in Faragher v. City of Boca Ratón, 524 U.S. 775 (1998) and in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998) (hereinafter the "Faragher/Ellerth affirmative defense"). ( Docket No. 44, at 9.) The Hotel contends that immediately after Cautiño reported Solla's offensive behavior, the Hotel took all steps that could be reasonably expected of an employer to investigate and take corrective measures. According to the Hotel, Cautiño was pleased with the steps taken by the company. Finally, it is defendants' contention that Cautiño's retaliation claim fails as a matter of law because she cannot identify an adverse employment action taken against her by reason of her engaging in protected conduct. Summary judgment is thus arguably appropriate regarding her retaliation claim according to the Hotel.

CIVIL 03-1035 (SEC)                    10

Plaintiffs oppose defendants' motion for summary judgment on December 7, 2004 arguing that they have established without any reasonable doubt that a genuine controversy exists between the parties and that the same must be resolved by the trier of fact.   (Docket No. 59.)   With respect to the sexual harassment, Cautiño submits that a hostile work environment was created which eventually led to her discharge.  In other words, it is her position that the harassment suffered by her was sufficiently severe and pervasive that it created working conditions which were intolerable.   Furthermore, the Hotel then illegally terminated her.   In sum, Cautiño claims that disputed issues of fact preclude the entry of summary judgment.

Plaintiffs have not complied with the requirements of Local Rule 56(c) at all. Again, the rule requires that the non-moving party submit with its opposition a separate, short, and concise statement of material facts.  The non-moving party is directed to admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by the rule. Plaintiffs have not substantiated their arguments with a statement of contested facts and with proper and specific references to the record as required by the anti-ferret rule.  Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d at 215; Domínguez v. Eli Lilly & Co., 958 F. Supp. at 728. I know that the court has the discretion to obviate application of the ant-ferret rule in some situations but it is clear that the exception makes the rule and there is no valid reason for making that exception and ignoring

CIVIL 03-1035 (SEC)                    11

such rule in this case.  Furthermore, statements of fact are deemed admitted unless they are properly controverted, including an opposing statement of facts which the non-moving party may make.  See Local Rule 56(e); Movsovitz & Sons of Fla., Inc. v. Alex González, Inc., 367 F. Supp. 2d 207, 212 (D.P.R. 2005).

Plaintiffs have filed a "Statement of Contested Facts" which is a list of what appears to be uncontested facts.  (Docket No. 57, Dec. 6, 2004.)  In the 21-paragraph statement of facts,[4] plaintiff repeats many of the allegations which appear in the complaint.  At least 12 of those statements do not make proper and specific reference to the record, and thus do not comply with the anti-ferret rule in this district, a rule which is geared to avoid precisely what plaintiffs are inviting the court to do, that is, ferret.  See Alsina Ortiz v. Laboy, 400 F.3d 77, 80-81 (1st Cir. 2005).  Another four of the statements refer to documents which are not in the English language and are not accompanied by an English translation.  Thus, plaintiffs have failed to comply with the requirements of Local Rule 10(b) in this respect.  See 48 U.S.C. § 864; Peña Crespo v. Commonwealth of P.R., 408 F.3d 10, 13 (1st Cir. 2005).  Thus, paragraphs 1, 2, and 9, 16 and 17 (in part) may qualify as a statement of uncontested facts, but not contested facts, thus rendering Hotel's statement of uncontested facts unchallenged.  However, while there is no issue as

---

[4]The heading of the statement leads to confusion because it appears to be a statement of uncontested facts, rather than contested facts, in which case, the statement of uncontested facts presented by the Hotel is uncontroverted.  See Local Rule 56(e); The Gov't of the Fed'n of Saint Christopher & Nevis v. Detroit Diesel Corp., 368 F. Supp. 2d 155, 157-58 (D.P.R. 2005).

CIVIL 03-1035 (SEC)                    12

to paragraphs 1 and 2, paragraph 9, (Statement of Contested Facts, Docket No. 57)

relates physical and emotional contacts and/or advances which are not substantiated

by the referenced deposition, which refers to action that is at best ambiguous and

which renders the above statement conclusory.  So also the conclusion that sexual

co-habitation was offered (an offer which included taking care of Cautiño and her

daughter), as well as the offer of matrimony, which she declined.  Cautiño was given

numerous gifts and makes reference to a deposition page which refers to an irritable

and nasty Solla's yelling at her.  (Statement of Contested Facts, Docket No. 57, Ex.

8.)  The statement about Mr. Hauss' attitude toward her and her new job functions

are also conclusory. (Statement of Contested Facts, Docket No. 57, Ex. 9, 10, 11,

16.)  With those facts and allegations in mind as outlined above, I analyze the

competing interests in the action.

                                        A.

       Title VII prohibits discrimination "against any individual with respect to his

[or her] compensation, terms, conditions, or privileges of employment, because of

such individual's ... sex ...."  42 U.S.C. § 2000e-2(a)(1).  Sexual harassment is

unquestionably a form of discrimination prohibited by Title VII.  Meritor Sav. Bank,

FSB v. Vinson, 477 U.S. 57, 64 (1986).  EEOC regulations define what constitutes

sexual harassment in the Title VII context.  Section 1604.11(a) of Title 29 Code of

Federal Regulations provides the following:

CIVIL 03-1035 (SEC)                    13

> Harassment on the basis of sex is a violation of Sec. 703 of
> Title VII. Unwelcome sexual advances, requests for sexual
> favors, and other verbal or physical conduct of a sexual
> nature constitute sexual harassment when (1) submission
> to such conduct is made either explicitly or implicitly a
> term or condition of an individual's employment, (2)
> submission to or rejection of such conduct by an individual
> is used as the basis for employment decisions affecting
> such individual, or (3) such conduct has the purpose or
> effect of unreasonably interfering with an individual's work
> performance or creating an intimidating, hostile, or
> offensive working environment.

29 C.F.R. § 1604.11(a) (footnote omitted). Specifically, a sexual harassment claim

may be brought under two separate theories: quid pro quo and hostile work

environment. See Rodríguez-Hernández v. Miranda-Vélez, 132 F.3d 848, 854 (1st

Cir. 1998).

Quid pro quo harassment "occurs when a supervisor conditions the granting

of an economic or other job benefit upon the receipt of sexual favors from a

subordinate, or punishes that subordinate for refusing to comply." Lipsett v. Univ.

of P.R., 864 F.2d 881, 897 (1st Cir. 1988). Indeed, the essence of a quid pro quo

harassment claim is that the employee was subjected to unwelcome sexual advances

by a supervisor and that his or her reaction to said advances affected him or her in

some tangible aspect of employment. Chamberlin v. 101 Realty, Inc., 915 F.2d 777,

783 (1st Cir. 1990). To prevail in a quid pro quo harassment claim, the plaintiff

must demonstrate the following:

> (1) the plaintiff-employee is a member of a protected
> group; (2) the sexual advances were unwelcome; (3) the

CIVIL 03-1035 (SEC)                    14

> harassment was sexually motivated; (4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment; and (5) respondeat superior liability has been established.

Id. at 783-84; see also Vélez-Cortés v. Nieves-Valle, 253 F. Supp. 2d 206, 212 (D.P.R. 2003), aff'd, 375 F.3d 35 (1st Cir. 2004).  In response, a defendant may attempt to show that the harassing conduct either did not take place or did not affect a tangible aspect of plaintiff's employment.  Lipsett v. Univ. of P.R., 864 F.2d at 898; see also García v. V. Suárez & Co., 288 F. Supp. 2d 148, 158 (D.P.R. 2003).

A hostile work environment, such as one which is allegedly existed at the Hotel after Solla was fired, is created when an employer requires an employee "to work in a discriminatorily hostile or abusive environment." Crowley v. L.L. Bean, Inc., 303 F.3d 387, 394 (1st Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  "A hostile work environment exists in violation of Title VII '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (quoting Harris v. Forklift Sys., Inc., 510 U.S. at 21.)  Since there is no "mathematically precise test" to determine whether enough evidence has been presented for a hostile environment claim, Harris v. Forklift Sys., Inc., 510 U.S. at 22, the court must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was

CIVIL 03-1035 (SEC)                    15

physically threatening or humiliating; and whether it unreasonably interfered with plaintiff's work performance.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002).

As noted, in a hostile work environment claim, the conduct complained of has to be severe or pervasive so as to alter the terms and conditions of employment of a Title VII plaintiff.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. at 754.  To be actionable under Title VII, the "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. at 787.  "'[S]imple teasing,' offhand comments, and isolated incidents ... will not amount to [a] change[] in the 'terms and conditions of employment.'"  Faragher v. City of Boca Ratón, 524 U.S. at 788 (internal quotations omitted).  Thus, to succeed in a hostile work environment claim, a plaintiff must prove the following:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

CIVIL 03-1035 (SEC)                    16

O'Rourke v. City of Providence, 235 F.3d 713, 728 (1ˢᵗ Cir. 2001).  Because the accumulated effects of incidents over time can amount to a hostile work environment, the allegations of harassment must be considered collectively. Id. at 729.

I start this discussion by pointing out that Cautiño's work performance generally met standards but that she had deficiencies to the point where she was given a warning on August 14, 2001 due to the negligent execution of her work, in that she prepared a report ignoring instructions on the way it was to be prepared. (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶¶ 4, 5.)  On September 11, 2001, Cautiño complained about her supervisor, and his gender-based comments to Waleska Otero, the Hotel's Human Resources Director. (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 6.) The Hotel notes that Cautiño never complained about any alleged touching by Solla, nor that she was sexually harassed. (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 6.)

Solla admitted, when confronted by Waleska Otero, that he had acted inappropriately toward Cautiño when he asked her to leave his office on two occasions, and explained that any comment was not made to cause Cautiño any harm. (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 7.) No formal report of sexual harassment or any other complaint was made before the written warning of August 14, 2001.  Cautiño confided in co-workers about her problems but did not follow the Hotel's procedures applicable under the circumstances.

CIVIL 03-1035 (SEC)                    17

Rather she began a journal of the alleged harassment.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶¶ 8, 10.)

The Hotel conducted an investigation about Cautiño's allegations, immediately taking corrective measures by separating Cautiño and Solla in their job duties by sending Solla temporarily to another office.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 15.)  Upon concluding the investigation, the Hotel presented Solla with a written warning urging him to cease any inappropriate behavior and or modify his behavior.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 16.)  Solla denied the allegations of sexual harassment and claimed that moving from his office would be an admission to the allegations.  Solla then resigned upon being asked by the Hotel to move to another office, not because of his conduct in relation to Cautiño.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 17.)  Cautiño was then assigned temporary duties.  Because the Risk Management Department in Puerto Rico essentially consisted of Solla and Cautiño, the Hotel decided to transfer the duties of the department to the corporate headquarters in Dallas, Texas.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶¶ 18, 19.)  The reorganization caused that there was no more work for Cautiño.  Her position was eliminated as well as that of Solla, who had already resigned.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 19.)  She was then placed in another office, with Tim Hauss, Operations Manager, at the same salary.  Duties included organizing and preparing lists of cases that were closed and grouped

CIVIL 03-1035 (SEC)                    18

in files and boxes.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 20.)

Plaintiff Cautiño complained of Mr. Hauss' treatment toward her.  She was notified that her position would be eliminated and was kept employed for two months after which, on January 15, 2002, she was terminated.  She was offered unwarranted severance pay in lieu of signing a release.  She was thus handed some documents in keeping with Wyndham's policies.  She was not compelled to sign the release as alleged in the complaint.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶¶ 21, 22, 23.)

There is no issue that upon the filing of the administrative complaint against Solla, and the conclusion of the internal investigation, Solla admitted acting inappropriately in relation to Cautiño.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 7.)  The Hotel, however, did not fire Solla as a result of Cautiño's complaint.   Rather he quit because of his perception that by allowing the reassignment, he would be admitting the imputed conduct.  (Defendants' Statement of Undisputed Facts, Docket No. 46, ¶ 17.)

Given the above undisputed facts, the court needs to determine whether Cautiño was the victim of sexual harassment under either a quid pro quo theory or a hostile work environment theory.  The Supreme Court has held that

> When a plaintiff proves that a tangible employment action
> resulted from a refusal to submit to a supervisor's sexual
> demands [quid pro quo], he or she establishes that the

CIVIL 03-1035 (SEC)                    19

> employment decision itself constitutes a change in the
> terms and conditions of employment that is actionable
> under Title VII. For any sexual harassment preceding the
> employment decision to be actionable, however, the
> conduct must be severe or pervasive [hostile work
> environment].

<u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. at 753-54. Thus, the distinction between the two threshold liability theories revolves around the subsidiary question of whether the plaintiff suffered a "tangible employment action." <u>See</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. at 808. The Court in <u>Ellerth</u> further discussed the concept of tangible employment action and defined it as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. at 76.

The evidence shows that Cautiño has not shown all the elements of a quid pro quo harassment claim. She clearly is a member of a protected class:  she is a woman. Similarly, there can be no serious dispute that the sexual advances of Solla were unwelcome as evidenced by Cautiño's reaction to the proposal and that they were sexually motivated. However, it is clear that Cautiño did not suffer a tangible employment action as a result of the harassment since, as it will be shown below, her termination ultimately occurred for reasons other than her failure to acquiesce to the advances of Solla. To the contrary, Solla was reprimanded for his action, told

CIVIL 03-1035 (SEC)                    20

to change his conduct, and resigned rather than to be perceived as having been so offensive to Cautiño to the point where he had to be moved to another office.

Furthermore, the evidence submitted by plaintiff in opposition to summary judgment is also insufficient to create a factual dispute worthy of a trial regarding her hostile work environment claim.  As explained above, the conduct has to be sufficiently severe and pervasive that it altered the terms and conditions of Cautiño's employment at the Hotel.  Therefore, as to frequency of the harassing conduct, there is not enough evidence justifying submitting this issue to the trier of fact.  In addition, it appears that the conduct complained of was not severe or pervasive enough to create a hostile work environment.  While Cautiño submits that Solla's conduct made her very nervous, to accept that would be to look at the situation through a subjective prism, which was apparently used when one regards the conclusions found in plaintiff's statement of contested facts which refer to numbered lines of deposition testimony.  And for a hostile work environment claim to prevail, the conduct must also be objectively offensive.  In this case, there is nothing to show that the conduct was physically threatening or to what extent it interfered with Cautiño's work performance.  Similarly, there is no evidence regarding how, if at all, the conduct of hotel personnel was intimidating or subjected Cautiño to ridicule.  Consequently, I must conclude that with the admissible, founded evidence presented in the motion,  no reasonable trier of fact could find that Cautiño was the victim of an abusive and hostile work environment.  The proven conduct of Solla although

CIVIL 03-1035 (SEC)                    21

somewhat reprehensible and at very least unpleasant, did not escalate to the level of a hostile work environment even if Cautiño subjectively perceived it to be so.  <u>See, e.g.</u>, <u>Lee-Crespo v. Schering-Plough Del Caribe, Inc.</u>, 354 F.3d 34, 46-47 (1st Cir. 2003).

B.

The Hotel has also raised the <u>Faragher/Ellerth</u> defense.  The <u>Faragher/Ellerth</u> affirmative defense may be raised by an employer in cases where a plaintiff is attempting to impose vicarious liability for the hostile work environment created by a supervisor with higher or immediate authority over the complaining employee. <u>Reed v. MBNA Mktg. Sys., Inc.</u>, 333 F.3d 27, 32 (1st Cir.), <u>reh'g and reh'g en banc denied</u>, 337 F.3d 1 (1st Cir. 2003) (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. at 807-08; <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. at 764-65).[5]  The defense is comprised of two necessary elements:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and
> (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

---

[5]Note that the liability standard is somewhat different when the court is presented with an attempt to impose vicarious liability on an employer for the sexual harassment perpetrated by a co-worker instead of a supervisor.  In such a case, the employer is liable if the plaintiff demonstrates that it was negligent.  In other words, if the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action."  <u>Crowley v. L.L. Bean, Inc.</u>, 303 F.3d at 401 (quoting <u>White v. N.H. Dep't of Corr.</u>, 221 F.3d 254, 261 (1st Cir. 2000)).

CIVIL 03-1035 (SEC)                    22

*Faragher v. City of Boca Raton*, 524 U.S. at 807-08.  The defense is not available when the "harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 765.  The burden of proof as to both elements of the *Faragher/Ellerth* defense lies on the employer. *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 20 (1st Cir. 2002).

I address this issue for the sake of argument because of my finding above that Cautiño offered insufficient evidence to demonstrate the existence of a hostile work environment. In addition, I analyze this issue assuming that the affirmative defense applies to the period in which Cautiño claims she endured a hostile environment, mindful that the defense is not applicable to a situation in which the harassment culminates in a tangible employment action.  Contrary to plaintiffs' argument, the evidence shows that the Hotel took immediate corrective action upon receiving the administrative complaint.  Solla was reprimanded for his action, told to change his conduct, and resigned rather than to be perceived as having been so offensive to Cautiño to the point where he had to be moved to another office.  Before receiving the formal complaint from Cautiño, the Hotel had not been placed on notice that there was a problem.  Cautiño shared her issues with co-workers.  Moreover, she ignored the channels put in place by the Hotel to make corrective measures under the circumstances, and when she finally did, the Hotel took swift action.  Therefore, after *Faragher* and *Ellerth*, it is clear that the Hotel in this case is not liable for the

CIVIL 03-1035 (SEC)                23

conduct of Solla and that the affirmative defense prevails.  Cf. Burlington Indus., Inc. v. Ellerth, 524 U.S. at 762 ("[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer.").

C.

Next I address defendants' contention that Cautiño's retaliation claim must be dismissed.  Specifically, the Hotel contends that Cautiño's retaliation claim under Title VII fails as a matter of law because she has not identified an adverse employment action taken by the Hotel against her in connection with the filing of her internal sexual harassment complaint. Cautiño's salary was never affected. Her position and department at the Hotel were both eliminated. She was kept on for two months doing other work on a temporary basis.  Consequently, the Hotel submits that Cautiño's retaliation claim must be dismissed.

Title VII, specifically 42 U.S.C. § 2000e-3(a), provides in relevant part that

> [i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  To prove a claim for retaliation, Cautiño has to "establish that (1) she engaged in protected conduct; (2) she experienced an adverse employment action; and (3) [that] there [is] a causal connection between the protected conduct and the adverse employment action." Calero Cerezo v. United

CIVIL 03-1035 (SEC)                    24

States Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (citing Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002)).  The prima facie case of retaliation has been described as a "small showing" that is "not onerous" and is "easily made." Kosereis v. Rhode Island, 331 F.3d at 213 (citations omitted).  Once a prima facie case of retaliation is established, a presumption of retaliation arises and the McDonnell Douglas[6] burden-shifting approach is employed.  The defendant has the burden (of production) to articulate a legitimate non-discriminatory reason for the employment decision.  If the employer succeeds at this task, then the burden shifts back to the plaintiff to show pretext and retaliatory animus.  Calero Cerezo v. United States Dep't of Justice, 355 F.3d at 26.

Cautiño has satisfied the first prong of the prima facie requirement, that is, by filing an administrative complaint, she engaged in protected conduct.  Cautiño has also satisfied the second prong of the prima facie requirement, that is, she experienced an adverse employment action.  However, the admissible evidence presented does not reflect that there is a causal connection between the protected conduct and the adverse employment action and plaintiffs have not presented any evidence to show that the adverse employment action was anything other than a reorganization which resulted in the elimination of her position and department.

---

[6]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

CIVIL 03-1035 (SEC)                    25

(See Defendant's Statement of Uncontested Facts, Docket No. 46, at 7, ¶¶ 19-20.)

Thus, plaintiffs have made out a prima facie case of retaliation.

In view of the above I recommend that the motion for summary judgment attacking Cautiño's complaint based upon sexual harassment, discriminatory and retaliatory action on the part of the Hotel be GRANTED.

D.

Having concluded that all of the causes of action based on federal law should be dismissed, I also recommend that the Puerto Rico law causes of action by plaintiffs be dismissed. See González-De-Blasini v. Family Dep't, 377 F.3d 81, 89 (1st Cir. 2004) ("Under 28 U.S.C. § 1367, '[a] district court may decline to exercise supplemental jurisdiction' if 'the district court has dismissed all claims under which it has original jurisdiction.'"); see also Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104-05 (1st Cir. 2004), cert. denied, 125 S. Ct. 1064 (2005); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

IV.

In view of the above, it is my recommendation that the Hotel's motion for summary judgment be GRANTED in its entirety and that this case be dismissed.

CIVIL 03-1035 (SEC)                    26


        Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

        At San Juan, Puerto Rico, this 29th day of July, 2005.


                                 S/ JUSTO ARENAS
                        Chief United States Magistrate Judge